UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

MATTHEW JOHNSON,

Plaintiff,

v.

MARCO GUTIERREZ, et al.,

Defendants.

Case No. 23-cv-00843-LB

**ORDER DENYING MOTION TO SEVER OR DISMISS**

Re: ECF No. 139

**INTRODUCTION**

This is a 42 U.S.C. § 1983 civil-rights action. Plaintiff Matthew Johnson alleges that, as a pretrial detainee in San Francisco County Jail between August 2022 and April 2024, jail employees subjected him to unconstitutional conditions of confinement: unlawful strip searches, disciplinary and administrative segregation, retaliation for filing grievances, a wrongful transfer, and denial of adequate medical care. The operative complaint is the Third Amended Complaint (TAC), which names as defendants the City and County of San Francisco (CCSF) and CCSF employees.

The defendants — the CCSF, Lieutenant James Gomez, Sergeants Earl Hays, Bryant Mercado, and Samuel Vigil, Captain Stephen Tilton, and Deputy Thomas Murphy — move under Federal Rules of Civil Procedure 21 to sever claims against individual defendants because they are separate incidents. They argue too that the court lacks jurisdiction over the Bane Act claim, which was

ORDER – No. 23-cv-00843-LB

predicated only on vicarious liability for Ms. Ferrer's conduct. The court lacks supplemental jurisdiction over the Bane Act claim and otherwise denies the motion.

**STATEMENT**

**1.  The Plaintiff's Claimed Injuries**

Mr. Johnson was a pretrial detainee in county jail from August 4, 2022, through April 6, 2024.[1] He had no pre-existing heart condition on admission.[2] The following allegations about his confinement are relevant to the pending motion.

**November 2022 — Strip Search and Disciplinary Segregation — Deputy Murphy.** On November 26, 2022, following a report that Mr. Johnson and another inmate had an altercation, Deputy Murphy conducted a cavity search of Mr. Johnson in the presence of other officers and inmates, and three female nurses, and then left him naked in front of others for about ten minutes.[3] He placed Mr. Johnson in disciplinary segregation for about four days. The cell was covered in urine and excrement and lacked toilet paper. Mr. Johnson lost all privileges (phone time, showers, recreation, commissary, and the like).[4] He filed a grievance against Murphy.[5]

**January 2023 — Identification as Snitch and Administrative Segregation — Deputy Ng.** On January 9, 2023, Deputy Ng called Mr. Johnson a jailhouse snitch, "told four other prisoners the same," and threatened to allow other inmates to harm him because Mr. Johnson had submitted

---

[1] Third Am. Compl. (TAC) – ECF No. 78 at 4 (¶ 19). Two additional deputies are named defendants and have not appeared: Deputies Michael Ng and Marco Gutierrez. *See* Dkt.; Order – ECF No. 125. All parties, including the non-appearing defendants, have consented to magistrate-judge jurisdiction. 28 U.S.C. § 636(c)(1). Consents – ECF Nos. 72 (plaintiff and defendants CCSF, Calderoni (dismissed previously in ECF No. 69 at 19–20 and not named in the operative complaint at ECF No. 78), Gomez, Hayes, Mercado, Murphy, Tilton, and Vigil), 104 (CCSF, Gomez, Hayes, Mercado, Murphy, Tilton, Vigil, and specially appearing defendant Clarisa Ferrer, which is the correct spelling of her first name (not Clarissa)); Rep. – ECF No. 128 (consents of Ng and Gutierrez); Minute Order – ECF No. 129 (documenting same). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] TAC – ECF No. 78 at 1–2 (¶ 1).

[3] *Id.* at 5 (¶¶ 21–22), 6 (¶ 26).

[4] *Id.* at 6 (¶¶ 27–28).

[5] *Id.* (¶ 29).

staff-complaint grievances.[6] The next day, four inmates charged with murder told Mr. Johnson about Deputy Ng's allegation that he was a snitch and threatened to hurt him if he did not leave the housing unit. This caused Mr. Johnson to request rehousing, which resulted in his placement (by Deputy Selrich) in administrative segregation, without access to religious services, recreation, education, and other services.[7]

**January 2023 — Sexual Harassment — Deputy Gutierrez.** On January 11, 2023, while transporting Mr. Johnson to court, Deputy Gutierrez allegedly said — in front of other deputies, two prisoners, and a female nurse — that Mr. Johnson "had no ass to grab onto while he fucked him from behind" and that Mr. Johnson was "fucking gay." On January 26, 2023, Mr. Johnson filed a grievance against Deputy Gutierrez. "He also submitted grievances regarding the pattern of retaliation he had suffered since November 2022."[8]

**January–February 2023 — Administrative Segregation — Captain Tilton.** After Mr. Johnson filed his grievances, a Sergeant Soto escorted Mr. Johnson to a conference room, where Captain Tilton told him that he was a "trouble inmate" who "always played the victim" because he filed grievances. Captain Tilton threatened to keep Mr. Johnson in administrative-segregation and in fact kept him there. Mr. Johnson then sent copies of his grievances to the California Attorney General's Office.[9] On January 27, 2023, Mr. Johnson filed a grievance about his safety. Captain Tilton "sarcastically responded" that he would be "ok" and placed in "protective custody." Mr. Johnson filed grievances about retaliation and his refusing to attend court to avoid further sexual harassment or retaliation by Deputy Gutierrez.[10] On February 2, 2023, a Deputy Clark gave Mr. Johnson a "fabricated ad-seg questionnaire," signed by Captain Tilton, "stating that Mr. Johnson was disruptive in general population, prone to assault other prisoners, and . . . a documented threat

---

[6] *Id.* (¶ 31).

[7] *Id.* at 6–7 (¶ 32).

[8] *Id.* at 7 (¶¶ 35–36) (cleaned up).

[9] *Id.* at 7–8 (¶ 37).

[10] *Id.* at 8 (¶ 38).

to the safety of the facility and [] staff. Mr. Johnson disputed the form."[11] In February 2023, Mr. Johnson noticed that his legal mail from the Attorney General's Office was opened when he received it. He grieved the issue.[12] In March 2023, deputies transported Mr. Johnson from County Jail 2 to County Jail 3, where he was placed in administrative segregation, under 24-7 lockdown without access to programming, despite not meeting the criteria for placement, and kept in a COVID-19 quarantine cell for forty-five days, despite not testing positive for COVID. The required every-ten-day review of his placement did not occur. He filed a grievance.[13]

**March 2023 — Medical Care — CCSF and Ferrer.** During this extended time in administrative segregation, Mr. Johnson's anxiety, stress, and panic worsened. He submitted multiple grievances and medical slips and asked (verbally) deputies, nurses (including Clarisa Ferrer), and psychiatric staff for medical attention, reporting his increased heart rate, difficulty breathing, and pain. They did not summon immediate medical attention. He lost consciousness, and deputies transported him to San Francisco General Hospital, where doctors diagnosed him with an abnormal heart flutter, scheduled emergency heart surgery, and ordered a heart monitor and placement in County Jail 2 (so that he could be medically observed).[14]

**March 2023 — Sergeant Vigil.** The night before the surgery, Sergeant Vigil moved Mr. Johnson unjustifiably into an isolation cell that had excrement, period blood, and trash. Mr. Johnson lost consciousness and was rushed to the hospital. The doctors discharged him to County Jail 2 so that he could be medically monitored. The plaintiff declined the surgery because he had not slept, had anxiety from the placement, and feared he might die. He continued to wear his heart monitor.[15]

**March 2023 — Threat of Retaliatory Transfer — Deputy Murphy.** On March 27, 2023, Deputy Murphy "confronted" Mr. Johnson, saying, "I'm glad to see you." Mr. Johnson responded that he did not want an interaction with Deputy Murphy — because of his lawsuit against him

---

[11] *Id.* (¶ 39).

[12] *Id.* (¶ 40).

[13] *Id.* (¶ 41).

[14] *Id.* at 8–9 (¶¶ 42–43).

[15] *Id.* at 9 (¶¶ 44–45).

United States District Court
Northern District of California

filed on March 10, 2023 — unless Deputy Murphy issued a direct order.[16] Deputy Murphy responded, "I'll see you in court, and you'll see what I can do." Deputy Murphy then tried to "fabricate" a disciplinary charge against Mr. Johnson to transfer him from County Jail 2 to disciplinary segregation in County Jail 3. Sergeant Vigil told Deputy Murphy that he had no grounds to discipline Mr. Johnson and emailed Lieutenant Gomez "about the situation."[17]

**March–April 2023 — Lieutenant Gomez.** "Sometime thereafter," Lieutenant Gomez transferred Mr. Johnson back to County Jail 3 despite the medical-discharge order directing placement at County Jail 2 to allow medical observation.[18] Lieutenant Gomez threw administrative-segregation garb at Mr. Johnson, signifying his administrative-segregation placement.[19] This exacerbated Mr. Johnson's condition and stress, and he lost consciousness and was rushed to San Francisco General Hospital. After his discharge, he was transferred back to an administrative-segregation pod at County Jail 3.[20] On March 30, 2023, Mr. Johnson was admitted for his heart procedure, and on April 4, 2023, he was discharged with instructions for a heart monitor, an extra mattress, and extra blankets. On his return, San Francisco deputies placed him in administrative segregation without justification or the required review every ten days.[21]

**June 2023 — Sergeant Mercado.** On June 20, 2023, Sergeant Mercado removed the hospital-ordered extra mattress and blankets, knowing that Mr. Johnson had a heart condition. Mr. Johnson complained. Sergeant Mercado responded that he was "not afraid of a lawsuit and that he did not honor discharge instructions."[22] "Sometime thereafter, UCSF followed up with Mr. Johnson" and learned that he did not have the heart monitor "per the discharge instructions."[23]

---

[16] Compl. – ECF No. 8; TAC – ECF No. 78 at 9 (¶ 46).

[17] TAC – ECF No. 78 at 9–10 (¶ 46).

[18] *Id.* at 10 (¶ 47).

[19] *Id.* (¶ 48).

[20] *Id.* (¶ 49).

[21] *Id.* (¶ 50).

[22] *Id.* at 11 (¶ 51).

[23] *Id.* (¶ 52).

**July 2023 — Sergeant Hays.** On July 27, 2023, Sergeant Hays conducted a cavity search of Mr. Johnson, forcing him to bend over naked, in the presence of his cellmate and other deputies, allegedly because a body scan showed contraband in Mr. Johnson's waistband. "On information and belief," this was in retaliation for the lawsuit against Deputy Calderoni.[24]

**Subsequent Failure to Prescribe Beta Blockers.** Mr. Johnson has been diagnosed with Tachycardia, Wolff Parkison White Syndrome, and Premature Ventricular Contractions," must take beta blockers for the rest of his life to treat his high blood pressure, and needs to check in regularly with UCSF. The CCSF is not taking him to his appointments.[25]

## 2. Relevant Procedural History

The operative complaint has the following claims against the following defendants, with strikethroughs denoting defendants who have been dismissed via earlier orders:

(1) An unlawful strip search in violation of the Fourth Amendment and 42 U.S.C. § 1983 (against Hayes and Murphy).

(2) Unlawful punishment in violation of the Fourteenth Amendment and § 1983 for a strip search in front of others, disciplinary and administrative segregation, placement in unsanitary cells, a jail transfer that did not allow medical observation, and removing prescribed mattresses and blankets (against ~~Gomez~~, Hayes, ~~Mercado~~, Murphy, Tilton, and Vigil).

(3) Unlawful conditions of confinement in violation of the Fourteenth Amendment and § 1983 for disciplinary and administrative segregation, unsanitary cells, and the jail transfer (against ~~Gomez~~, Murphy, Tilton, and Vigil).

(4) A due-process violation in violation of the Fourteenth Amendment and § 1983 by the placement in disciplinary and administrative segregation (against ~~Gomez~~, Murphy, and Tilton).

(5) Retaliation for filing grievances in violation of the First Amendment and § 1983 (against Gomez, ~~Murphy~~, Ng, and Tilton).

(6) Denial of medical care in violation of the Fourteenth Amendment and § 1983 by the jail transfer that did not allow medical observation, failing to provide a heart

---

[24] *Id.* at 11–12 (¶¶ 53–57). The claims against Calderoni were dismissed. Order – ECF No. 69 at 19–20. The operative complaint does not name him as a defendant. TAC – ECF No. 78.

[25] TAC – ECF No. 78 at 12 (¶ 58). Wolff Parkinson White Syndrome is a rare congenital heart defect present at birth. Order – ECF No. 134 at 4 & n.19 (judicially noticing this fact).

monitor, removing prescribed mattresses and blankets, the placement in an unsanitary cell (against Gomez, ~~Mercado~~, and Vigil).

(7) Supervisory liability in violation of § 1983 for the deprivation of rights including administrative segregation, denying prescribed items, the strip search, and the retaliation (against Gomez, Hays, ~~Mercado~~, Tilton, and Vigil).

(8) ~~*Monell* liability under § 1983 for the administrative segregation for non-disciplinary reasons (based on at least five other incidents) (against the CCSF).~~

(9) A violation of the Bane Act, Cal. Civ. Code § 52.1, for the medical harm (against CCSF, ~~Ferrer~~, Gomez, Hayes, ~~Mercado~~, Murphy, Ng, Tilton, and Vigil).

(10) Intentional infliction of emotional distress (IIED) for the conduct (against ~~the CCSF~~, ~~Ferrer~~, Gomez, Gutierrez, Hayes, Mercado, Murphy, Ng, Tilton, and Vigil).

(11) ~~Failure to summon medical care (against the CCSF and Ferrer).~~[26]

The claims against Mercado were dismissed because the removal of bedding three months after the surgery was not plausibly denial of medical care or IIED. The claims against Gomez were dismissed because the transfer was not plausibly punishment or a due-process violation. The claim against Murphy was dismissed for lack of a nexus to Gomez's transfer.[27] The claims against Ferrer were dismissed for lack of supplemental jurisdiction and a failure to comply with the Government Claims Act.[28]

## ANALYSIS

The CCSF contends that the defendants are improperly joined in the lawsuit because the events are discrete, not a pattern of unconstitutional violations.[29]

Parties may be joined as codefendants if (1) a right to relief is asserted by or against them jointly, severally, or in the alternative; (2) the right to relief arises out of the same transaction, occurrence, or series of transactions or occurrences; and (3) any question of law or fact common to all parties joined will arise in the action. Fed. R. Civ. P. 20(a)(2). On motion or on its own, the court may at any time, on just terms, add or drop a party. Fed. R. Civ. P. 21. Because Rule 21 provides no standards to determine whether parties are misjoined, courts look to Rule 20 for

---

[26] TAC – ECF No. 78 at 12–20 (¶¶ 62–104); Orders – ECF Nos. 89, 134. The earlier order about Ferrer necessarily disposes of the claim against the CCSF. Order – ECF No. 134 at 1, 8.

[27] Order – ECF No. 89 at 5–8.

[28] Order – ECF No. 134 at 7–8.

[29] Mot. – ECF No. 139 at 6.

ORDER – No. 23-cv-00843-LB                7

United States District Court
Northern District of California

guidance. *Pan Am. World Airways, Inc. v. U.S. Dist. Ct. for Central Dist. of Cal.*, 523 F.2d 1073, 1079–80 (9th Cir. 1975).

This case has been pending for three years, two since the CCSF entered an appearance.[30] The claims are plausibly connected by allegations of a chain of retaliatory events: Murphy's strip search set in motion those retaliatory events, Mr. Johnson filed a grievance, Ng retaliated by labeling him a snitch (increasing his safety risk and resulting in administrative segregation), Tilton maintained the segregation and threatened further isolation for filing grievances, Vigil placed him in a soiled cell on the eve of surgery, and Gomez transferred him despite a medical-discharge order. Tilton is a supervisor responsible for enforcing policies. The medical-care claims allegedly result in part from the administrative segregation.

The court lacks supplemental jurisdiction over the Bane Act claim, which was predicated on vicarious liability for Ms. Ferrer's acts. The court previously held that it lacked supplemental jurisdiction for Ferrer's alleged failure to summon medical care.[31] The dismissed claims against Ferrer preclude any CCSF liability under the Bane Act. The Bane Act claim otherwise is asserted only against the Doe defendants.[32] Otherwise, the court denies the motion. It may be that some claims ultimately will stand alone (and not be tried together). Given the court's broad discretion to sever parties and claims, the issue is best reserved for summary judgment. *City & County of San Francisco v. Trump*, No. 25-cv-01350-WHO, 2025 WL 2243619, at *7 (N.D. Cal. Aug. 5, 2025).

## CONCLUSION

The motion is denied. This resolves ECF No. 139.

**IT IS SO ORDERED.**

Dated: April 2, 2026

_____

LAUREL BEELER
United States Magistrate Judge

---

[30] Compl. – ECF No. 1; Stipulation – ECF No. 42 (the CCSF's appearance on April 17, 2024).

[31] Order – ECF No. 134 at 7.

[32] Mot. – ECF No. 139 at 15–16 (making this argument); Mot. – ECF No. 84 at 4–5 (same); Blackline Comparison of TAC to SAC, Ex. C to Wald Decl. – ECF No. 84-4 at 19–20 (¶¶ 95–96 v. ¶¶ 87–88).

United States District Court
Northern District of California